RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0100P (6th Cir.)
File Name: 02a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HEATHER CHANDLER,
          *Plaintiff-Appellant/*
              *Cross-Appellee,*

          *v.*

SPECIALTY TIRES OF AMERICA
(TENNESSEE), INC.,
          *Defendant-Appellee/*
              *Cross-Appellant.*

Nos. 00-5395/5593

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 98-00363—Thomas G. Hull, District Judge.

Argued: January 23, 2002

Decided and Filed: March 25, 2002

Before: JONES and COLE, Circuit Judges; GWIN, District
Judge.[*]

---

[*] The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** D. Bruce Shine, Donald F. Mason, Jr., SHINE & MASON, Kingsport, Tennessee, for Appellant. Jeffrey C. Taylor, WIMBERLY, LAWSON, SEALE, WRIGHT & DAVES, Morristown, Tennessee, for Appellee. **ON BRIEF:** D. Bruce Shine, Donald F. Mason, Jr., SHINE & MASON, Kingsport, Tennessee, for Appellant. Steven H. Trent, BAKER, DONELSON, BEARMAN & CALDWELL, Johnson City, Tennessee, for Appellee.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge. This is an appeal and cross-appeal in a wrongful discharge case arising under the Family and Medical Leave Act of 1993 ("FMLA") (29 U.S.C. § 2601 et seq.) and the Tennessee Handicap Act ("THA") (Tenn. Code Ann. § 8-50-103). Plaintiff Heather Chandler ("Chandler" or "Plaintiff") appeals the district court's dismissal of her THA action on summary judgment. Defendant Specialty Tires of America (Tennessee), Inc. ("Specialty" or "Defendant") cross-appeals the jury verdict and judgment in favor of Chandler on the FMLA claim; it also appeals from the award of liquidated damages to Plaintiff.

Because the Tennessee Supreme Court has sufficiently indicated that the THA protects employees in the private sector from discrimination, and because Chandler has raised a genuine issue of material fact, we **REVERSE** and **REMAND** that issue to the district court for further proceedings. Furthermore, because a reasonable jury could have concluded from the evidence that Specialty terminated Chandler for exercising her rights under the FMLA, and did so unreasonably, we **AFFIRM** the district court's entry of

Notwithstanding the fact that Defendant failed to move for a reduction in the liquidated damage award, the record shows that, even if Beck had a good faith belief that Chandler was not covered, the grounds for the belief were unreasonable. Beck testified that he had no experience with the FMLA the day he fired Chandler, that he made no inquiries into her request for leave, that he made no independent effort to check the information supplied by McNeer regarding her status, and that the decision to terminate Chandler was based on an eight minute conversation with McNeer. We conclude that the district court did not abuse its discretion when it declined to reduce the liquidated damage award.

### III. CONCLUSION

For the foregoing reasons we **REVERSE** the district court's grant of summary judgment for Defendant and **REMAND** the THA claim to the district court for proceedings consistent with this opinion. We **AFFIRM** the district court's judgment in all other respects.

judgment on the jury verdict and the award of liquidated damages to Plaintiff.

### I. BACKGROUND

Chandler was terminated from her job as a personnel assistant on May 22, 1998, while convalescing after a suicide attempt. Five days prior to her discharge, on Sunday, May 17, Chandler awoke, dressed her daughter, and attended church with her mother and stepfather. Following lunch at her parents' home, Chandler left her daughter with her parents, crossed the street to her own residence, and took an overdose of pills.

At nine o'clock that evening, Chandler's parents entered her unlocked house and found her lying semi-conscious on the bed. They rushed her to the emergency room where she was placed in intensive care. The next day she was transferred to Woodridge Hospital, where she was treated by Dr. Lee Ellen Naramore, a psychiatrist. During the week she was at Woodridge, Chandler kept in close contact with the plant manager, Joe McNeer. She told McNeer what had happened and that she needed time off for medical treatment; McNeer agreed to place her on paid leave. Nobody at Specialty indicated to Chandler that her job was in jeopardy. By the end of the week, she felt better and was planning to return to work the following Tuesday.

Robert Beck, personnel manager for Specialty and Chandler's immediate supervisor, learned of Chandler's intentional overdose on Tuesday, May 19. Believing that such behavior demonstrated a lack of responsibility, Beck concluded that he could no longer trust Chandler to handle the duties of her position and decided to terminate her employment. Beck testified that he had no knowledge of any diagnosis of illness, but based his decision entirely on what he characterized as Chandler's irresponsible act of taking an overdose of pills. He did admit, however, to knowing that she had been granted medical leave.

Beck drafted a termination letter on May 20, 1998. Chandler's ex-husband, Johnny Peterson, received the letter from McNeer on May 22, but did not deliver it to her until the 24th. On May 26, Chandler went to the office to get her possessions; while there, she had a tense conversation with Beck. Chandler requested that she be returned to her former position or given a similar position, but Beck refused.

Chandler filed suit in the Eastern District of Tennessee on December 7, 1998, alleging wrongful termination under the FMLA and the THA. On August 2, 1999, Specialty filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for partial summary judgment under Fed. R. Civ. P. 56. Specialty argued that the THA by its own terms spoke only of discrimination against "applicants." Because Chandler claimed she had been discriminated against while an employee, and not while an applicant, she could not state a claim under the THA. In the alternative, Defendant argued that Chandler had not alleged sufficient facts to demonstrate that she was "handicapped" as that term is used within the statutory section, and thus Defendant was entitled to partial summary judgment. The district court agreed with Defendant that the THA only prohibits discrimination against "applicants" and granted Specialty's motion for summary judgment in a memorandum opinion dated January 7, 2000.

Chandler's remaining claim under the FMLA proceeded to trial before a jury on February 17, 2000.[1] At close of evidence, Specialty moved for judgment as a matter of law. *See* Fed. R. Civ. P. 50. The jury returned a verdict in favor of Plaintiff the next day. Ten days later, on February 28,

---

[1]Prior to the jury trial, Specialty filed motions *in limine* in opposition to the admission into evidence of certain notes Chandler and Peterson took of their conversations with Specialty employees. Specialty argues on appeal that this evidentiary decision was in error. Given the other evidence in the case, and the fact that the majority of the notes were contemporaneous, we find no prejudice to the substantial rights of Specialty and find any error to be harmless. *See* Fed. R. Civ. P. 61.

court judge who fired his bailiff for taking leave for cocaine addiction had fired him for illegal conduct and not for taking leave). That case went unreported in the Ninth Circuit and is accorded even less weight in our own circuit.

For the above reasons, we affirm the judgment denying Defendant's Rule 50 and Rule 59 motions.

### C. Liquidated Damages

Because we have held that the remedial provisions of the FMLA mirror those of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 et seq.), *see Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 644 (6th Cir. 1998), we adopt the corresponding standard of review for award of liquidated damages. *Cf. Pezzillo v. Gen. Tel. & Elecs. Info. Sys.*, 572 F.2d 1189, 1190 (6th Cir. 1978) (per curiam) (applying abuse of discretion standard to award of liquidated damages under the FLSA). We therefore review an award of liquidated damages under the FMLA for abuse of discretion. *Accord Thorson v. Gemini, Inc.*, 205 F.3d 370, 384 (8th Cir. 2000).

Section 2617(a)(1)(A)(iii) of the FMLA provides that, in addition to compensatory damages specified in § 2617(a)(1)(A)(i) & (ii), an employer shall be liable for an amount of liquidated damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of the employer's violation of § 2615 of the statute. However, the district court may reduce that award to only compensatory damages if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615." 29 U.S.C. § 2617(a)(1)(A)(iii). The employer must therefore show *both* good faith *and* reasonable grounds for the act or omission. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991).

it necessarily imply causation. But where, as here, the jury weighed additional evidence, including the credibility of Defendant's proffered reason for termination, the demeanor of witnesses on the stand, and the evidence of Plaintiff's prior work habits, we are loath to substitute our judgment for that of the jury. It may be that the jury mistook the legal standard to be applied and treated this as an ADA and not an FMLA case -- but the jury returned a simple verdict based upon clear and proper instructions and it was not unreasonable for the jury to infer from the evidence that Chandler was fired for taking leave.

Defendant's reliance on *Maddox v. Univ. of Tenn.*, 62 F.3d 843 (6th Cir. 1995), *Brohm v. JH Props., Inc.*, 149 F.3d 517 (6th Cir. 1998), and *Doe v. King County*, No. 97-35876, 1999 WL 50860 (9th Cir. Jan. 7, 1999), is misplaced. In *Maddox*, an assistant coach was fired for outrageous public behavior while intoxicated. The plaintiff asserted that he was fired for his alcoholism in violation of the ADA. This Court upheld summary judgment against the plaintiff, finding that it was his behavior and not his alcoholism that precipitated the termination. 62 F.3d at 848. *Maddox* can be distinguished. First, as Defendant consistently points out, the case at bar arises under the FMLA and not the ADA; hence, *Maddox* can only be cited as analogous authority. Second, Chandler's case comes to us after a full jury trial and not after summary judgment. Defendant had ample opportunity to support its position that Chandler was fired for taking a drug overdose, and not for taking leave. The jury concluded otherwise. We see nothing in the record that would permit us simply to assume the jury made a legally infirm factual inference. Therefore, we decline to find *Maddox* persuasive. In *Brohm*, the plaintiff suffered from sleep apnea and was fired from his position as an anesthesiologist for sleeping on the job. Unlike the present case, the plaintiff in *Brohm* never requested FMLA-qualifying medical leave, and it was on that basis that summary judgment was entered for the defendant. 149 F.3d at 523. Finally, we refuse to accord any persuasive value to *Doe*. *See* 1999 WL 50860 at **2 (holding that a superior

Defendant renewed its motion for judgment as a matter of law or, in the alternative, for a new trial. *See id.*; Fed. R. Civ. P. 59. The district court denied the motions and awarded Plaintiff liquidated damages in the amount of $36,652.02 and attorney fees and costs in the amount of $47,320.48.

Plaintiff now appeals the order dismissing her claim under the THA. Defendant cross-appeals the denial of its motion for judgment as a matter of law or a new trial and appeals the award of liquidated damages to Plaintiff.

## II.  DISCUSSION

### A.  The THA Action

Because the district court considered evidence outside the pleadings in its dismissal, we review the THA claim under the summary judgment standard. Fed. R. Civ. P. 12(b); *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 877 (6th Cir. 2002). We review a district court's decision to grant summary judgment *de novo*. *Id.* The district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The THA, codified at Tenn. Code Ann. § 8 -50-103, states:

There shall be no discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

*Id.* § 8-50-103(a).

Specialty argued that Chandler's case should be dismissed because the statute only applies to "applicants" and it is undisputed that Chandler was not an applicant at the time of her discharge. The district court agreed, stating in its memorandum opinion:

The plain language of the statute indicates that it was designed to protect job *applicants* from discrimination by both public and private employers based upon any physical, mental or visual handicap. It also clearly prohibits handicap discrimination in hiring, firing and other terms of employment by state agencies. It does not appear to protect employees in private employment from handicap discrimination once they have been hired. No Tennessee courts have addressed this question although one unpublished opinion from the Tennessee Court of Appeals assumes (without discussion) that the Act applies to a discharge situation involving a private employer.

After careful consideration of this interesting question, the Court has decided not to follow the lead of this isolated opinion but to adhere to the actual wording of the statute.

J.A. at 146 (footnote omitted).

On appeal, Specialty restates and refines its argument. Even if the THA prohibits "discrimination in the hiring, firing, and other terms and conditions" of employees, it argues, the statute only covers discrimination against public employees because the disjunctive "or of any private employer, against any applicant" demonstrates legislative intent to cover only applicants in the private sector. Def.'s Brief at 18-19.

Chandler argues that the Tennessee Supreme Court's decision in *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.

(noting that "[t]he ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief").

It is apparent that hospitalization for severe depression is covered by the statute. *See* 29 U.S.C. § 2611(11)(A). Moreover, Specialty stipulated that Plaintiff was entitled to take leave. Defendant only argues that "an employer is free to terminate an employee while on FMLA leave so long as the termination is not because the employee exercised her rights under the FMLA." Def.'s Brief at 27. The central question is whether the jury could have reasonably found that Beck fired Chandler for taking leave rather than for ingesting an overdose of drugs, or even for having been diagnosed with depression.

We find that there was sufficient evidence to support the jury verdict. We are mindful that the trial court is always better able to judge witness credibility than is the appellate court. Beck insists that he took no account of whether Chandler was on leave in his decision to terminate her. The jury did not believe him. There was no special verdict, so we cannot determine what specific facts the jury found compelling. However, these facts were known to the jury: Beck knew that Chandler was on medical leave. He knew that she had been hospitalized for a suicide attempt. He decided to terminate her employment shortly after finding out she was hospitalized. The timing of her termination coincided with the end of her period of leave. He did not think that she was qualified for leave under the FMLA. In addition, Beck admitted that, prior to her termination, Chandler had been an excellent employee; her periodic reviews, admitted into evidence, were exemplary.

The district judge clearly instructed the jury that they could not find Defendant liable unless they found a causal connection between Chandler's leave and her termination. Proximity in time can raise a prima facie case of retaliatory discharge. *See Skrjanc*, 272 F.3d at 314. But proximity alone may not survive summary judgment, *see id.* at 317, nor does

have been entitled had the employee not taken the leave." *Id.* § 2614(a)(3)(B). Finally, employers are prohibited from interfering, restraining, or denying the exercise of or attempted exercise of any FMLA right. *Id.* § 2615(a)(1). This prohibition includes retaliatory discharge for taking leave. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Specialty argues that Chandler has provided no evidence that she was discharged for exercising her rights under the FMLA. According to Defendant, Beck never considered the cause of Chandler's suicide attempt or the fact that it might result in an absence from work; instead he considered "only the *act* of overdosing, itself." Def.'s Brief at 26. Because the act of intentionally overdosing on drugs is not protected activity under the FMLA, Defendant argues the jury had no legal basis to support the verdict.

Chandler counters that this distinction between the act of overdosing and the underlying medical treatment for depression is a false one. She notes that Specialty acknowledged that she requested medical leave while hospitalized on May 18, 1998. She was on leave for one week and she was not offered her position or a similar one upon her return; instead, she was fired.

In analyzing this case, it is important to note what this case is not. This is not an action arising under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.). Neither does this portion of the case address the merits of Plaintiff's THA claim. The FMLA protects an employee from adverse action as a result of his taking leave for a serious medical condition. It does not protect an employee from adverse action motivated by the underlying medical condition itself. Although the factual scenarios that give rise to an FMLA or ADA cause of action may often coincide, the legal entitlements that flow from these facts will differ. *Cf. Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001)

---

3d 698 (Tenn. 2000), decided after the district court disposed of her case, demonstrates conclusively that the THA applies to termination of a private employee. In *Barnes*, Larry Barnes, an employee of Goodyear, alleged he was laid off from his job due to a neurological disorder. Goodyear did not challenge the applicability of the statute to Barns's claim; instead it challenged the sufficiency of the evidence. *See id*. at 704. The Tennessee Supreme Court assumed the statute was applicable and went on to clarify the appropriate framework for analyzing handicap discrimination under the THA. However, it did state in its decision that "the THA prohibits an employer from terminating an employee for a perceived disability or handicap. *See generally Sutton* [*v. United Air Lines, Inc.*, 527 U.S. 471, 486-89 (1999).]" and that "[t]he record supports a finding that the basis for the layoff was an impairment." *Barnes*, 48 S.W.3d at 707.

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). "Moreover, we must give an intervening state decision its full force and effect, despite the fact that the decision was unavailable to the district court at the time it rendered its decision." *Ziegler v. IPB Hog Mkt., Inc.,* 249 F.3d 509, 518 (6th Cir. 2001).

Specialty cannot point to any state authority that supports its interpretation of the statute. Instead, it argues that *Barnes* did not directly address the applicability of the statute to termination by private employers, and hence we are not bound to apply what is essentially dicta.

We disagree. *Barnes* sends an unmistakable signal that the Tennessee Supreme Court understands the THA to apply to discriminatory termination in private employment. Even if this Court were convinced the language in *Barnes* was dicta, we are called upon to predict how the state supreme court would decide a case based upon "all relevant data," including

such dicta. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). Combined with the fact that a lower appellate court in Tennessee has assumed the THA to apply to private employers, *see Hallums v. Coca-Cola Bottling Co.*, 874 S.W.2d 30, 31 (Tenn. Ct. App. 1993), we have little difficulty concluding that the THA applies to discriminatory discharge by private employers.

Furthermore, we find that there is a genuine issue of material fact whether Beck fired Chandler because he regarded her as disabled. *See Barnes*, 48 S.W.3d at 706. The undisputed evidence in the record is that Beck lost confidence in Chandler only after he discovered that she had taken an overdose of pills in a suicide attempt. His stated reason was that he thought her act of intentionally overdosing was irresponsible. Specialty has offered no evidence of a legitimate non-discriminatory reason for the termination other than to emphasize that Beck considered only her act of overdosing and not her mental condition. This unsupported explanation is not sufficient to overcome Chandler's evidence. Therefore, the case shall be remanded to the district court for trial on the THA claim.

### B. Judgment as a Matter of Law or New Trial

We review *de novo* the district court's denial of a Rule 50 motion for judgment as a matter of law. *See Monday v. Oullette*, 118 F.3d 1099, 1101 (6th Cir. 1997). In reviewing such a motion, we do not weigh the evidence, evaluate the credibility of witnesses, or substitute our judgment for that of the jury. Instead, we must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The motion should be granted, and we should reverse the district court's decision, only if reasonable minds could not come to a conclusion other than one in favor of the movant. *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995).

A district court's disposition of a Rule 59 motion for a new trial is reviewed for abuse of discretion. *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 n.7 (6th Cir. 1999); *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996). This Court has previously defined an abuse of discretion as a "'definite and firm conviction that the trial court committed a clear error of judgment.'" *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578-79 (6th Cir. 1998) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). The jury's verdict should not be disturbed as long as it is based upon sufficient evidence and "was reasonably reached." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996). When presented with conflicting evidence, credibility and factual determinations are properly left for the jury to resolve. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995). After reviewing the evidence and allowing the jury all reasonable inferences, we find no reversible error.

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11). An employee need not specifically mention the FMLA when taking leave -- all the employee must do is notify the employer that FMLA-qualifying leave is needed. *See* 29 C.F.R. § 825.303(b); *see also Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1999). With exceptions not at issue here, an employer is obliged to restore the employee to her prior position or an equivalent position upon return from leave. 29 U.S.C. § 2614(a)(1). However, the statute emphasizes that "[n]othing in [section § 2614] shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would